**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**Case No.:**

DAVID ALAN, individually and on behalf
of all others similarly situated,

      Plaintiff,                              CLASS ACTION

v.

GRAND CELEBRATION CRUISES,
LLC; PARADISE CRUISE LINE
OPERATOR, LTD. INC.;

      Defendants.

_____/

## PLAINTIFF'S CLASS ACTION COMPLAINT

COMES NOW, DAVID ALAN ("Plaintiff" or "Alan"), individually and on behalf of all other persons similarly situated, bringing this action against Defendants GRAND CELEBRATION CRUISES, LLC and PARADISE CRUISE LINE OPERATOR, LTD. INC. and alleges, upon personal knowledge as to his own conduct, investigation of counsel, and upon information and belief as to the conduct of others, as follows:

### INTRODUCTION

1.      This case involves a scheme developed by a travel marketing company and cruise line operator(s) to market purportedly "free cruises" to consumers.  The sales of these purported free vacation packages is achieved through aggressive telemarketing campaigns in plain violation of TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C § 227, *et seq.*

2.      Plaintiff is informed and believes, and thereon alleges, that the all Defendants are conducting the aforementioned telemarketing campaign(s) in violation of the TPCA in connection with their operation of the MV GRAND CELEBRATION cruise ship, which sails exclusively out of the Port of Palm Beach, Florida to Grand Bahama Island[1].

3.      All Defendants acted in concert to market travel packages to consumers through telemarketing efforts that include sending unauthorized advertisements *via* facsimile and placing unauthorized "robo-calls" to consumers *via* ATDS and/or a pre-recorded or artificial voice.

4.      Plaintiff brings this class action against Defendants to secure redress because Defendants willfully violated the TCPA by causing unsolicited calls to be made to Plaintiffs' and other class members' cellular telephones through the use of an auto-dialer and/or pre-recorded or artificial voice message.

5.      Defendants made one or more unauthorized calls to Plaintiff's cell phone using an automatic telephone dialing system ("ATDS") and/or prerecorded voice for the purpose of soliciting business from Plaintiffs.

6.      Pursuant to the TCPA, Plaintiffs and the Class Members seek judgment against Defendants equal to $500.00 per violation, together with attorneys' fees, court costs, and treble damages (for knowing and/or willful violations).

**PARTIES**

7.      Plaintiff DAVID ALAN is a citizen of the State of California who resides in Reseda, Los Angeles County, California.

8.      Defendant GRAND CELEBRATION CRUISES, LLC (hereinafter, "Grand Celebration"), is a business organized under the laws of the State of Florida.  Grand Celebration

---

[1] For more information, visit Defendants' website: www.grandcelebcruises.com. Defendants' cruise calendar may be viewed here: https://www.grandcelebcruises.com/calendar.

may be served through its registered agent for service of process, Luis S. Pardo.

9.      Defendant PARADISE CRUISE LINE OPERATOR, LTD. INC. ("Paradise Cruise Line") is a corporation organized under the laws of the Commonwealth of the Bahamas. Paradise Cruise Line maintains its principal place of business at 115 Pine Brook Road, Bedford, New York 10506. Paradise Cruise Line may be served through its registered agent for service of process, C.T. Corporation System, at 1200 South Pine Island Road, Plantation, Florida 33324.

10.     Defendants GRAND CELEBRATION CRUISES, LLC and PARADISE CRUISE LINE OPERATOR, LTD. INC. are herein sometimes referred to collectively as the "Cruise Line Defendants" or "Defendants". Upon information and belief, the Cruise Line Defendants are responsible for operating the MV GRAND CELEBRATION cruise ship, which sails daily between the Port of Palm Beach, Florida and Grand Bahama Island.

11.     Plaintiff is informed and believes, and thereon alleges that the Cruise Line Defendants are also responsible for orchestrating and/or directing the aggressive telemarketing campaigns to consumers' cell phones, in violation of the TCPA. Plaintiff is further informed and believes, and thereon alleges that the Cruise Line Defendants utilize call centers primarily based in the Fort Lauderdale, Florida area in order to conduct their telemarketing campaign.

12.     Whenever in this complaint it is alleged that Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

13.     Plaintiff is informed and believes and thereon alleges that at all relevant times,

each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was the owner, agent, servant, joint venturer and employee, each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent of each of the other Defendants.  Plaintiff is informed and believes and thereon alleges that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

14.     At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for each other's acts and omissions.

## JURISDICTION & VENUE

15.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least one member of the putative class is a citizen of a state different from Defendant.  Furthermore, Plaintiff Class consists of at least one hundred members.

16.     This Court has personal jurisdiction over the Cruise Line Defendants because their telemarketing operations they are conducting in violation of the TCPA are tied directly to their operation of the MV GRAND CELEBRATION cruise ship, which sails exclusively out of the Port of Palm Beach, Palm Beach County, Florida, which is a part of the Southern District of Florida.

17.     Venue is proper in this District because the conduct which is the subject of this lawsuit emanated from this District. Furthermore, Plaintiff is informed and believes, and thereon alleges, that the Cruise Line Defendants utilize call center(s) that are located primarily in or near Fort Lauderdale, Florida.

## LEGAL BASIS FOR THE CLAIMS

18.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.    In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

19.    Specifically, the TCPA restricts telephone solicitations (*i.e*., telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems—principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

20.    Unless the recipient has given prior express written consent, as of October 16, 2013, the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a

physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

21.     Furthermore, in 2008, the FCC issued a Declaratory Ruling reiterating that "a company on whose behalf a telephone call is made bears the responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, 23 FCC Rcd 559, 564-65 (¶ 10) (2008).  This ruling specifically recognized "on behalf of " liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b).

22.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

23.     Since the TCPA's passage in 1991, the FCC has taken multiple actions implementing and interpreting the TCPA, and has issued numerous Declaratory Rulings clarifying specific aspects of the TCPA. The most recent, FCC Omnibus Order of July 10, 2015, (the "Order") provided further protection to consumers by, among other things, clarifying that ATDS is broadly defined, confirming liability attaches to calls made to the wrong number or reassigned number, and clarifying consumers may revoke consent through reasonable methods. *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, (July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order. The Order defines an "autodialer" as equipment/software that has the future capacity to dial randomly or sequentially. "In other words, the capacity of an

autodialer is not limited to its current configuration but also includes its potential functionalities." The Order clarifies the meaning of "capacity" and that "any call" made using a device with the capacity to serve as an ATDS requires consent under the TCPA, even if the caller is not "actually...using those functionalities to place calls" at the time. *Derby v. AOL, Inc.*, No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *3 (N.D. Cal. Sept. 11, 2015).

24. The Order also states that calls placed to the wrong number or a reassigned number are made with knowledge of the error after the first call; and consumers may revoke consent through any reasonable method, including orally: "[w]e clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber.  If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such;" "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."

25. Furthermore, the TCPA established the National Do-Not-Call List, and also mandates all businesses that place calls for marketing purposes maintain an "internal" do-not-call list ("IDNC"). See 47 C.F.R. § 64.1200(d). The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]." *Id*. The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not-Call Registry. *Id*. at § 64.1200(d)(3), (6). Any company, or someone on the company's

behalf, who calls a member of the company's IDNC is liable to that person under the TCPA. The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

## FACTUAL BACKGROUND AS TO PLAINTIFF ALAN

26.     On or about February 28, 2017, at approximately 12:30 p.m.(PST), Defendants contacted Alan on his cellular telephone number ending in 7572 *via* ATDS as defined by 47 U.S.C. § 227(a)(1).

27.     Alan's caller ID showed the source number (818) 643-4913 as the call was incoming.

28.     When Alan answered the call, he heard a brief pause before a cheerful, bubbly female operator greeted him on behalf of Grand Celebration, and informed him that he had won a free cruise.

29.     Alan inquired how Grand Celebration had obtained his contact information, and the female operator evasively replied that while she was unsure exactly how Defendants had obtained his contact information, Plaintiff had stayed at many of Defendants' hotels previously, and Plaintiff must have signed a document that enabled Defendants to contact him.

30.     Based on information and belief, Plaintiff Alan has never stayed at any of Defendants' hotels, if they exist, nor has he ever signed any document enabling Defendants to contact him with promotional offers.

31.     The female operator proceeded to ask Plaintiff various personal questions, including his home zip code, which she claimed made Plaintiff eligible for additional prizes, such as a free hotel stay.

32.     The female operator then provided Plaintiff with a call-back number for her "supervisor", who she indicated would answer any additional questions that Plaintiff had, and would help Plaintiff claim his prizes.

33.     Shortly thereafter, Plaintiff contacted the Grand Celebration supervisor at (888) 213-2452, which is the call-back number provided to him by the female Grand Celebration representative.

34.     Plaintiff was then greeted by a male operator with a very thick accent, who again informed Plaintiff that he was eligible to claim many various prizes.

35.     Plaintiff again inquired how the Defendants obtained his contact information, and also where this thickly-accented operator was calling from. The male operator gave a similarly evasive response to these questions.

36.     Plaintiff then informed Defendants' representative that he was not interested in any of their promotional offers, and he requested that Defendants not contact him again in the future.

37.     Alan never sought information from Defendants, nor did he ever authorize Defendants to contact him.

38.     On information and belief, Defendants purchased a database or list of telephone numbers that contained Alan's contact information.

39.     It was apparent to Plaintiff Alan that a computer had randomly dialed his number from an electronically stored database.

40.     Plaintiff Alan was not interested in Defendants' offers, and the call was unwanted and disruptive.

41.     At no time prior to or after the above-described calls did Plaintiff enter into a business relationship with Defendants or contact Defendants about their services.

42.     The telephone number Defendants called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

43.     Plaintiff Alan pays the bill associated with the cellular telephone assigned the number ending in 8070.

44.     Plaintiff Alan is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 7572.

45.     Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

46.     Alan did not provide Defendants prior express written consent to receive calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A).

47.     Defendants knowingly made (and continue to make) these telemarketing calls without the prior express written consent of the call recipients and knowingly continue to call them after requests to stop. As such, Defendants not only invaded the personal privacy of Plaintiffs and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

## ALLEGATIONS AS TO THE CRUISE LINE DEFENDANTS

48.     Plaintiff Alan identified Defendant Grand Celebration as the entity responsible for placing the February 28, 2017 call to his cell phone, based on representations made to him by Grand Celebration's telemarketers.

49.     After further investigation by Plaintiff and Plaintiff's Counsel, based upon information and belief, Plaintiff has determined that Paradise Cruise Line purchased the business relating to the operation of the MV GRAND CELEBRATION cruise ship in or around late December 2016 from its previous owners[2].

50.     Although the exact structure of Paradise Cruise Line's purchase of the MV GRAND CELEBRATION business is unknown, Plaintiff is informed and believes, and thereon alleges, that the former owners of the MV GRAND CELEBRATION cruise operation engaged in aggressive telemarketing campaign(s) that were substantially similar to the Cruise Line Defendant's actions as alleged herein, all in violation of the TCPA.

## ALLEGATIONS OF AGENCY LIABILITY

**Defendants**

51.     Defendants are, and at all times mentioned herein were, each a "person," as defined by 47 U.S.C. § 153(39).

52.     Upon information and belief, the party who placed the calls via ATDS to Plaintiff and the Proposed Class is Grand Celebration.  Upon information and belief, Paradise Cruise Line, including its officers, director's, and/or managing agents, oversees and controls Grand Celebration's actions and/or authorized and ratified Grand Celebration's solicitations through automated, prerecorded calls.

---

[2] *See* Palm Beach Post article "Port of PB cruise business purchased by former Norwegian Cruise CEO" dated December 28, 2016:
http://protectingyourpocket.blog.palmbeachpost.com/2016/12/28/port-of-pb-cruise-business-purchased-by-former-norwegian-cruise-ceo/

**Direct Liability**

53.     Grand Celebration initiated, directed the manner of, and actively participated in the subject telemarketing calls that are the subject of this case. The live telemarketers expressly identified themselves as working for Grand Celebration.

54.     The Cruise Line Defendants also initiated, directed the manner of, and actively participated in the subject telemarketing calls that are the subject of this case, or otherwise paid for the number leads and/or calls which were subsequently transferred to their call center(s). The call(s) placed to Plaintiff Alan demonstrates an example of the Cruise Line Defendants' direct participation. Had Plaintiff accepted the "free" cruise, the Cruise Line Defendants would have sold products and services to Plaintiff.

55.     It is the purpose of a call, rather than what is said, that matters for TCPA liability. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012).

56.     Each call, regardless of how "far" the call recipient permitted the sales pitch to go, was intended by all parties involved to result in sales of the Cruise Line Defendants' products and services.

57.     Because all of the Defendants initiated, directed, and actively participated in the calls, and at a minimum acted in concert to telemarket their products and services, no vicarious liability theory is necessary. The Cruise Line Defendants may be held directly liable for the calls.

58.     For the same reasons, the Cruise Line Defendants are directly liable for the subject robocall even if it used agents to initiate the call.

59.     Regarding principal liability, the 3d Restatement provides:

§ 7.03 Principal's Liability--In General

    "(1) A principal is subject to ***direct liability*** to a third party harmed by an agent's conduct when

(a) as stated in § 7.04, the agent acts with actual authority or the principal ratifies the agent's conduct and

(i) the agent's conduct is tortious, or

(ii) the agent's conduct, if that of the principal, would subject the principal to tort liability; or

(a) as stated in § 7.05, the principal is negligent in selecting, supervising, or otherwise controlling the agent; or

(b) as stated in § 7.06, the principal delegates performance of a duty to use care to protect other persons or their property to an agent who fails to perform the duty.

(2) A principal is subject to vicarious liability to a third party harmed by an agent's conduct when

(a) as stated in § 7.07, the agent is an employee who commits a tort while acting within the scope of employment; or

(b) as stated in § 7.08, the agent commits a tort when acting with apparent authority in dealing with a third party on or purportedly on behalf of the principal."

*See* RESTATEMENT (THIRD) OF AGENCY § 7.03 cmt. d(2) (2006) (emphasis added).

60.    The Defendants are therefore directly liable for the calls described herein.

61.    The Federal Communication Commission concurs that sellers such as the Cruise Line Defendants may not avoid liability by outsourcing telemarketing to third party:

Allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers(or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

### **Actual Authority**

62.    With regard to torts committed by an agent, the Restatement provides:

§ 7.04 Agent Acts With Actual Authority

> "A principal is subject to liability to a third party harmed by an agent's conduct when the agent's conduct is within the scope of the agent's actual authority or ratified by the principal; and
> (1) the agent's conduct is tortious, or
> (2) the agent's conduct, if that of the principal, would subject the principal to tort liability."

*See* RESTATEMENT (THIRD) OF AGENCY § 7.04 cmt. d(2) (2006).

63.     The purpose of the Grand Celebration's telemarketing was to serve the Cruise Line Defendants by soliciting sales leads from consumers on behalf of the Cruise Line Defendants.

64.     Grand Celebration had the actual authority of the Cruise Line Defendants to make the complained-of calls.

65.     The Cruise Line Defendants authorized Grand Celebration and/or its third party agents to perform telemarketing.

66.     The telephone number that Grand Celebration, or its agents, acting on behalf of the Cruise Line Defendants, called to contact Plaintiff via the use of an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

67.     Plaintiff did not provide his prior express consent allowing the Defendants to place telephone calls to Plaintiff's cellular phone utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A). On information and belief, the Defendants did not have the prior express consent, much less prior *written* consent required under the TCPA, for any of the automated calls they ultimately placed.

68.     Grand Celebration, and/or its third party telemarketing agent(s), acting on behalf of the Cruise Line Defendants, did not make telephone calls to Plaintiff's cellular phone "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

69.     The call Grand Celebration made by or on behalf of the Cruise Line Defendants to Plaintiff's cellular phone utilizing an "artificial or prerecorded voice" for non-emergency purposes and in the absence of Plaintiff's prior written consent, violated 47 U.S.C. § 227(b)(1)(A).

70.     Under the TCPA, the burden is on the Defendants to demonstrate that Plaintiff and Class Members provided prior written consent within the meaning of the statute.  *See 2008 FCC Declaratory Ruling*, 23 FCC Rcd at 565 (¶ 10).   For the same reasons, also in the alternative, the Cruise Line Defendants are liable for the actions of agents that placed the original subject robocall.

71.     The Cruise Line Defendants acted willfully, knowingly, and without regard to the TCPA when they caused the calls described above to be made.

**Apparent Authority**

72.     In the alternative, the Cruise Line Defendants gave Grand Celebration and/or any third party telemarketing agents substantial power to affect their legal relations with third parties, including Plaintiffs and consumers generally.

73.     The Cruise Line Defendants covered Grand Celebration with apparent authority to enter into advertising arrangements on their behalf, including through telemarketing.

74.     Grand Celebration's representatives specifically referenced a Bahamian cruise in the autodialed call(s) and explicitly state it has the authority to give it away for "free" and "all expenses paid." Upon information and belief, Grand Celebration and its agents had authority to

offer the so-called "free" cruise. Plaintiff reasonably believed the telemarketer called him as an agent of a cruise line. Additionally, since a representative followed the robocall with a live call regarding the "free" cruise, Plaintiff's belief was confirmed as reasonable by the principal Cruise Line Defendants. "Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." RESTATEMENT (THIRD) OF AGENCY § 2.03 cmt. c (2006). As such, Ultimate is an apparent agent of the Cruise Line Defendants.

**Ratification**

75.     In the further alternative, the Cruise Line Defendants repeatedly ratified the illegal marketing scheme by knowingly accepting the benefits of Grand Celebration's telemarketing activities when they accepted sales leads from the telemarketer. These sales leads provided the Cruise Line Defendants with additional business prospects.

76.     "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *See* RESTATEMENT (THIRD) OF AGENCY § 4.01(1) (2006). "A principal can ratify an act by (a) manifesting assent that the act shall affect the person's legal relationships, or (b) conduct that justifies a reasonable assumption that the person so consents." *Id.* § 4.01(2); *see also* ID. cmt. d ("[K]nowing acceptance of the benefit of a transaction ratifies the act of entering into the transaction.").

77.     Upon information and belief, the Cruise Line Defendants were, at a minimum, aware of the marketing scheme and that the leads resulted from calls using an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system" when they accepted the marketing leads.

78.     The Cruise Line Defendants manifested an intent to accept the benefit of the calling campaigns; including calls that were made on their behalf but that did not result in a sale.12

79.     Because the Cruise Line Defendants accepted benefits from numerous calls, the Cruise Line Defendants cannot avoid the burden associated with their ratification.

## CLASS ACTION ALLEGATIONS

80.     Pursuant to Rules 23(b) and (c) of the FEDERAL RULES OF CIVIL PROCEDURE, Plaintiff brings this action on their own behalf and on behalf of the proposed Plaintiff Class. Plaintiff seeks certification of a Plaintiff Class consisting of:

> All persons within the United States who Defendants, or some person on Defendants' behalf, called the person's cellular telephone by using an automatic telephone dialing system, or using any other device that has the capacity to dial numbers without human intervention, from the four (4) years prior to the filing of this Complaint up to the date the Class is certified, where Defendants' records fail to indicate prior express written permission from the recipient to make such call.

81.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released.

82.     Plaintiff does not know the number of members in the Class, but believes the Class members number in the tens of thousands, if not more.  This matter should therefore be

certified as a Class Action to assist in the expeditious litigation of this matter.

83.     Plaintiff and members of the Class were harmed by Defendants' acts in at least the following ways: Defendants, either directly or through their agents, illegally contacted Plaintiff and the Class members *via* their cellular telephones by using an ATDS, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of said Plaintiff and the Class members.  Plaintiff and Class members were damaged thereby.

84.     This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.  Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

85.     The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendants' records or Defendants' agent's records.

86.     There is a well-defined community of interest in the questions of law and fact affecting Plaintiffs and the Plaintiff Class.  The questions of law and fact common to Plaintiff and the Plaintiff Class predominate over questions affecting only individual members of the Plaintiff Class, and include, but are not limited to, the following:

> (a) Whether from the four (4) years prior to the filing of this Complaint, up to the date the Class is certified, Defendants contacted any member of the Class (other than calls made for emergency purposes or made with the prior express written consent of the called party) using any automatic dialing system to any telephone number assigned to a cellular phone service;

(b) Whether the members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct; and

(c) Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

87. Plaintiff asserts claims that are typical of the Plaintiff Class based upon the conduct of Defendants which is uniform across all Class Members.

88. Injuries sustained by Plaintiff and the members of the Plaintiff Class flow, in each instance, from a common nucleus of operative facts. Defendants or their agents used an ATDS to contact Plaintiff and the Plaintiff Class on their cellular telephones without prior consent.

89. Plaintiff is an adequate representative of the Plaintiff Class because his interests do not conflict with, and are not antagonistic to, the interests of the members of the Plaintiff Class he seeks to represent. Plaintiff will fairly and adequately represent and protect the interests of the Plaintiff Class.

90. Plaintiff has retained attorneys who are competent and experienced in the prosecution of class litigation and other complex litigation.

91. Plaintiff and the members of the Plaintiff Class have all sustained injuries caused by Defendants' conduct.

92. A class action is superior to other methods for the fair and efficient adjudication of the subject controversy. Absent a class action, the members of the Plaintiff Class likely will find the cost of litigating their individual claims to be prohibitive, and will have no effective remedy at all. Because of the relatively small size of the individual claims of the members of the Plaintiff Class, few members of the Plaintiff Class likely could afford to seek legal redress on their own. Absent a class action, members of the Plaintiff Class will continue to sustain damages, and Defendants' misconduct will proceed without remedy.

93.     The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.   Additionally, Defendants have acted, and failed to act, on grounds generally applicable to Plaintiff and the Plaintiff Class, requiring Court imposition of uniform relief to ensure compatible standards of conduct toward Plaintiff and the Plaintiff Class.

94.     Adequate notice can be provided to the members of the Class directly using information maintained in Defendants' records or through notice by publication.

## FIRST CAUSE OF ACTION

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S.C. § 227

**(By Plaintiff, individually and on behalf of the Class Members, Against All Defendants)**

95.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

96.     The foregoing acts and omission of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq.*

97.     As a result of Defendants' violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and the TCPA Text Class members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

98.     Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future .

## SECOND CAUSE OF ACTION

### KNOWING AND/OR WILLFUL VIOLATION OF

### THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. *ET SEQ.*

**(By Plaintiff, individually and on behalf of the Class Members, Against All Defendants)**

99.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

100.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq*.

101.     As a result of Defendants' violations of 47 U.S.C. §§ 227, *et seq*., Plaintiff and the TCPA Text Class members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

102.     Plaintiff and the TCPA Text Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## ATTORNEY'S FEES

103.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

104.     Plaintiff is entitled to recover reasonable attorney fees and request the attorneys' fees be awarded.

## JURY DEMAND

105.     Plaintiff, individually and on behalf of the Plaintiff Class, demand a jury trial on all issues triable to a jury.

///

## RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the Plaintiff Class, prays for the

following relief:

 a. An order certifying this matter as a class action with Plaintiff as Class Representative, and designating DIEPPA MARTINEZ, PLLC; KRISTENSEN WEISBERG, LLP; HUGHES ELLZEY, LLP; and THE LAW OFFICES OF TODD M. FRIEDMAN, PC as lead Class Counsel.

 b. An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

 c. An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

 d. Injunctive relief prohibiting Defendants' conduct complained of herein, pursuant to 47 U.S.C. § 227(b)(3)(A);

 e. Pre-judgment and post-judgment interest on monetary relief;

 f. An award of reasonable attorneys' fees and court costs in this action;

 g. All other and further relief as the Court deems necessary, just, and proper.

Respectfully Submitted,

  */s/ Raymond R. Dieppa*

Raymond R. Dieppa, Esq.
Florida Bar No. 27690
**DIEPPA MARTINEZ PLLC**
14 Northeast 1st Avenue, Suite 1001
Miami, Florida 33132
Telephone: (305) 722-6977
Fax: (786) 870-4030
*ray.dieppa@floridalegal.law*

John P. Kristensen
California Bar No. 224132
**KRISTENSEN WEISBERG, LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone:  (310) 507-7924
Fax:  (310) 507-7906
*john@kristensenlaw.com*
(*Pro Hac Vice* Application to follow)

Jarrett L. Ellzey
Texas Bar No. 24040864
**HUGHES ELLZEY, LLP**
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (888) 627-4573
Fax: (888) 995-3335
*jarrett@hughesellzey.com*
(*Pro Hac Vice* Application to follow)

Todd M. Friedman
California Bar No. 216752
**LAW OFFICES OF TODD M. FRIEDMAN, PC**
9171 Wilshire Boulevard, Suite 400
Beverly Hills, CA 90210
Telephone: (877) 619-8966
Fax:  (866) 633-0228
*tfriedman@toddflaw.com*
(*Pro Hac Vice* Application to follow)

**ATTORNEYS FOR PLAINTIFF
AND THE PROPOSED CLASS**